UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDRE MAURICE,

                    Plaintiff,

            -against-

BEYONCE GISELLE KNOWLES-CARTER;
BGK TRADEMARK HOLDINGS LLC; META
PLATFORMS INC.; GOOGLE LLC; UNITED
STATES PATENT AND TRADEMARK
OFFICE,

                    Defendants.

1:23-CV-0035 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Andre Maurice, of San Antonio, Texas, who is appearing *pro se*, filed this action

invoking the court's diversity jurisdiction. He sues: (1) Beyonce Giselle Knowles-Carter

("Beyonce"), the famous entertainer; (2) BGK Trademark Holdings LLC ("BGK"); (3) Meta

Platforms Inc. ("Meta" or "Facebook"); (4) Google LLC ("Google"); and (5) the United States

Patent and Trademark Office ("USPTO"). Plaintiff asserts claims of abuse of process,

defamation, and civil conspiracy under state law, as well as claims under New York's Donnelly

Act and the "New York Business and Professional Code." (ECF 2, at 1, 3.) He seeks damages in

the amount of $500,000,000, as well as the "cost of suit incurred in this action" and other

unspecified relief. (*Id.* at 16-17.)

By order dated January 5, 2023, the Court granted Plaintiff's request to proceed *in forma*

*pauperis* ("IFP"), that is, without prepayment of fees. For the reasons discussed below, the Court

dismisses this action, but grants Plaintiff 30 days' leave to replead his claims under state law,

under the court's diversity jurisdiction, against Beyonce, BGK, Meta, and Google.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

**BACKGROUND**

In order to consider the present claims, the Court must examine Plaintiff's related litigation history. The Court will summarize that litigation history here before discussing the present complaint.

**A.**    ***Knowles-Carter v. Maurice*, 1:16-CV-2532 (AJN) (JLC) (S.D.N.Y.) ("*Maurice I*")**

On April 5, 2016, Beyonce and BGK brought suit in this court (*Maurice I*), via counsel, against Plaintiff, Leana Lopez, Lee Lee, and Feyonce Inc., which appears to be Plaintiff's business, asserting claims of trademark infringement, unfair competition, and trademark dilution under federal law, as well as claims of deceptive acts and practices under Section 349 of New York's General Business Law, claims of trademark dilution under Section 360-L of New York's General Business Law, and claims of unfair competition and unjust enrichment under New York common law. (ECF 1:16-CV-2532, 1) (*Maurice I* complaint). Beyonce and BGK brought that action due to the *Maurice I* defendants' use of the mark "FEYONCÉ." (*Id.*)

2

In a memorandum and order dated September 30, 2018, the court denied Beyonce and BGK's motion for partial summary judgment and for entry of a permanent injunction against Plaintiff and Lopez. *Knowles-Carter v. Feyonce, Inc. (Maurice I)*, 347 F.Supp.3d 217 (S.D.N.Y. 2018).[1] In an order dated January 16, 2019, however, the court granted Beyonce and BGK's motion to dismiss that action voluntarily, under Rule 41(a)(2) of the Federal Rules of Civil Procedure, and dismissed *Maurice I* with prejudice. (ECF 1:16-CV-2532, 112.)

## B.   *Maurice v. USPTO*, 5:21-CV-0681 (XR) (W.D. Tx.) ("*Maurice II*")

On July 19, 2021, Plaintiff filed a *pro se* action against the USPTO in the United States District Court of the Western District of Texas (*Maurice II*). Plaintiff's claims in *Maurice II* arose from: (1) the USPTO's suspension of Plaintiff's application to register "FEYONCE" as a trademark, due to what the USPTO found to be that mark's confusing similarity with the registered trademark "BEYONCÉ," which is owned by Beyonce; (2) the USPTO's September 2019, Final Office Action in which it finalized its refusal to register FEYONCE as a trademark; and (3) the Trademark Trial and Appeal Board's ("TTAB") October 6, 2020, affirmance of the USPTO's refusal to register FEYONCE as a trademark. *See Maurice v. USPTO (Maurice II)*, No. SA-21-CV-0681, 2022 WL 875916 (W.D. Tx. Mar. 23, 2022). Plaintiff also asserted civil rights claims against the USPTO, alleging that it had discriminated against him. *Id.* at *2.

In an order dated March 23, 2022, the Western District of Texas granted the USPTO's motion to dismiss *Maurice II*. *Id.* at *1-4. The court held that it lacked subject matter jurisdiction to review the TTAB's affirmance because Plaintiff had failed to file his complaint in that court within the 63-day time limit for challenging such a TTAB decision, and it dismissed those claims that challenged the TTAB's affirmance without prejudice. *Id.* at *1-2, 4. The court also

---

[1] Plaintiff and Lopez appeared as *pro se* defendants in *Maurice I*.

dismissed without prejudice Plaintiff's civil rights claims under the doctrine of sovereign immunity. *Id.* at *2, 4. The court further dismissed with prejudice Plaintiff's remaining claims, including his claim of trademark infringement under federal law, for failure to state a claim on which relief may be granted. *Id.* at *2-4. Plaintiff did not appeal.

C.     **The present action**

On January 3, 2023, Plaintiff filed the present action in this court against Beyonce, BGK, Meta, Google, and the USPTO, invoking the court's diversity jurisdiction, in which he asserts claims of abuse of process, defamation, and civil conspiracy under state law, as well as claims under New York's Donnelly Act and the "New York Business and Professional Code" (ECF 2, at 1, 3), seeking damages in the amount of $500,000,000, as well as the "cost of suit incurred in this action" and other unspecified relief (*id.* at 16-17). In the present complaint, Plaintiff alleges that Beyonce and BGK filed *Maurice I* in this court "with the intent to cause great harm to" him, and that their filings in *Maurice I* "included defamatory material[,] which resulted in the loss of [his] business and business relationships." (ECF 2, at 1-2.) Plaintiff also alleges that in *Maurice I*, Beyonce and BGK "had no intention[] [of] going to trial. They abused the civil process in order to intimidate and diminish Plaintiff[']s online presence." (*Id.* at 2.) He further alleges that Beyonce and BGK "contacted . . . Google, Facebook, and [the] USPTO to conspire against [him] and instructed [them to] remov[e] . . . [his] business, products and applications without any court order or restraining order." (*Id.*)

Plaintiff additionally alleges the following: Beyonce filed *Maurice I* in this court "with the intent to cause great harm to . . . [P]laintiff through bad press." (*Id.* at 4.) Beyonce, BGK, Meta, Google, and the USPTO "conspired together to keep Plaintiff from advertising and maintaining his website and/or any future online businesses." (*Id.*) "As a result, . . . [the defendants] had [Plaintiff's] merchant account terminated . . . . [Beyonce and BGK] also

contacted Plaintiff's selling partner[] Etsy on several occasions without a restraining order or

court order to have Plaintiff[']s product listings removed." (*Id.* at 4-5.) Beyonce and BGK "had

the opportunity to prove their case . . . [in *Maurice I*], but chose to withdraw [that action]." (*Id.* at

5.) Their "illegal, improper or perverted use of process served its purpose . . . causing [] Plaintiff

to lose his business and his good name, and his access to online marketplaces, merchant accounts

and online advertising revenues." (*Id.*)

      Plaintiff has attached to his complaint, among other attachments, copies of emails and

other online notices to him that indicate the following: (1) on January 22, 2016, Etsy informed

Plaintiff that it had received a notice of trademark infringement from BGK, and that, as a result,

Etsy had deactivated 13 of Plaintiff's listings on Etsy's website; (2) on April 8, 2016, Simply

Commerce informed Plaintiff that it was terminating Plaintiff's use of Simply Commerce's

services; and (3) on an indecipherable date, Facebook notified Plaintiff "that the content

advertised by [his] advert is prohibited. . . ." (*Id.* at 22, 24-25, 33.)

      Moreover, Plaintiff alleges that Beyonce "conspired with the USPTO to prevent []

Plaintiff from obtaining exclusive rights to the term [FEYONCE] by purposely add[ing] office

actions. (Office Actions are letter[s] from the USPTO that list any legal issues with [a] trademark

as well as with [an] application [to register a trademark])." (*Id.* at 7.) He also alleges that, in a

first office action, the USPTO "stated likelihood of confusion [among other reasons for]

refusal. . . . [After Plaintiff corrected the relevant issues, the USPTO] issued another Office

Action with new" reasons for refusal, such as "likelihood of confusion . . . , failure to function as

a trademark[,] . . . [the proposed trademark] is [a] widely used message, [it] fail[s] to function as

a trademark[,] . . . ornamental use, and dates of use after date of filing." (*Id.* at. 7-8.) Plaintiff

contends that "[t]hese actions show bias, abuse of power and civil conspiracy. [Beyonce and

BGK] have contacted . . . [the] USPTO to oppose . . . [his] trademark application and to prevent

[him] from obtaining exclusive trademark rights to the term" FEYONCE. (*Id.* at 8.) He also

asserts that the USPTO "abused [its] position of power by prolonging and ultimately denying

[his] trademark application at" Beyonce's and BGK's "discretion." (*Id.*)

## DISCUSSION

### A.    Claims on behalf of Feyonce Inc.

To the extent that Plaintiff asserts claims on behalf of his business, Feyonce Inc., which

appears to be a corporation, the Court must dismiss those claims. The statute governing

appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an

attorney admitted to the practice of law by a governmental regulatory body, and that by a person

representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle

Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit

on behalf of another entity. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92

(2d Cir. 2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). While "some courts allow

sole proprietorships to proceed *pro se* [because] a sole proprietorship has no legal existence apart

from its owner," *Lattanzio*, 481 F.3d at 140 (citation omitted), courts generally do not allow

corporations, partnerships, associations, and other "artificial entities" to appear in court without

an attorney, *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202-

03 (1993).

Plaintiff does not allege that he is an attorney, and he does not allege that Feyonce Inc. is

a sole proprietorship; rather, it appears to be a corporation. Accordingly, to the extent that

Plaintiff asserts claims on behalf of Feyonce Inc., the Court dismisses those claims without

prejudice.

**B.    Claims against the USPTO and claims against Beyonce and BGK arising from the USPTO's denial of Plaintiff's application to register FEYONCE as a trademark**

The Court construes Plaintiff's claims against the USPTO, which appear to be claims for damages, as brought under the Federal Tort Claims Act ("FTCA"). To the extent that Plaintiff challenges the USPTO's decision to deny his application to register the term FEYONCE as a trademark, as affirmed by the TTAB, the Court construes such claims as brought against Beyonce and BGK under 15 U.S.C. § 1071(b).

**1.    Claims against the USPTO under the FTCA**

The Court must dismiss Plaintiff's claims against the USPTO under the FTCA because of the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government, including suits against any agency of the federal government, such as the USPTO, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. "The proper defendant in an FTCA claim is the United States. . . ." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015).

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999),

*abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before

bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his

administrative remedies by filing a claim for damages with the appropriate federal government

entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an

administrative claim must be in writing, specify the amount of damages sought, and be filed

within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may

thereafter challenge the Government's final denial in a federal district court by filing an action

within six months after the date of the mailing of the notice of final denial by the federal entity.

*See* § 2401(b). If no written final determination is made by the appropriate federal entity within

six months of the date of the claimant's filing of the administrative claim, the claimant may then

bring an FTCA action in a federal district court. *See* § 2675(a). While this exhaustion

requirement is jurisdictional and cannot be waived, *see Celestine v. Mount Vernon Neighborhood*

*Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are nonjurisdictional and

subject to equitable tolling," *Kwai Fun Wong,* 575 U.S. at 420.

> The FTCA's waiver of sovereign immunity, however, does not apply to:

> [a]ny claim arising out of assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit,
> or interference with contract rights: *Provided*, That, with regard to acts or
> omissions of investigative or law enforcement officers of the United States
> Government, the provisions of this chapter and section 1346(b) of this title shall
> apply to any claim arising, on or after the date of the enactment of this proviso,
> out of assault, battery, false imprisonment, false arrest, abuse of process, or
> malicious prosecution. For the purpose of this subsection, "investigative or law
> enforcement officer" means any officer of the United States who is empowered by
> law to execute searches, to seize evidence, or to make arrests for violations of
> Federal law.

28 U.S.C. § 2680(h).

> Thus, to the extent that Plaintiff asserts claims of abuse of process, libel (defamation), or

slander (same), against the USPTO for damages, under the FTCA, the Court dismisses those

claims under the doctrine of sovereign immunity, for lack of subject matter jurisdiction, because the Government has not waived its sovereign immunity as to such claims. Fed. R. Civ. P. 12(h)(3); *see* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 2680(h).

To the extent that Plaintiff asserts claims against the USPTO for damages, under the FTCA, that are not specifically prohibited by Section 2680(h), he has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal government entity for damages and subsequently received a final written determination before bringing this action; he has also not alleged facts showing that it has been more than six months since he has filed such an administrative claim. Accordingly, the Court also dismisses those claims under the doctrine of sovereign immunity, for lack of subject matter jurisdiction. *See* Fed. R. Civ. 12(h)(3); *see* § 1915(e)(2)(B)(iii).

    2.    **Claims under 15 U.S.C. § 1071(b)**

        a.  **Beyonce and/or BGK, not the USPTO, are the proper defendants for such claims**

To the extent that Plaintiff challenges the USPTO's decision to deny his trademark registration application, as affirmed by the TTAB, which seems to arise from an administrative proceeding in which Beyonce and/or BGK opposed his application, the proper defendant(s) for any such claims under 15 U.S.C. § 1071(b)(1) appear to be Beyonce and/or BGK, not the USPTO. A person seeking to register a trademark may seek judicial review of a decision of the TTAB by filing a civil action in a federal district court. *See* 15 U.S.C. § 1071(b)(1). When an adverse party administratively opposes a person's trademark registration application, and then the USPTO denies that application, followed by the TTAB's affirmance of that denial decision, "the USPTO is not a proper defendant" in a subsequently filed civil action seeking federal district court judicial review, under Section 1071(b)(1), of that decision. *Murdock v. Microsoft*

*Corp.*, No. 15-CV-3583, 2015 WL 5460190, at *4 (S.D.N.Y. Aug. 19, 2015) (citing *Pro-Football, Inc. v. Blackhorse*, 62 F. Supp. 3d 498, 506 (E.D. Va. 2014)); *see Pro-Football, Inc.*, 62 F. Supp. 3d at 506 (noting that a trademark "cancellation proceeding is necessarily an inter partes proceeding") (citing United States Trademark Law: Rules of Practice & Federal Statutes § 2.145); *see also* U.S. Trademark Law: Rules of Practice & Federal Statutes § 2.145(a)(1) ("An applicant for registration . . . , any party to an interference, opposition, or cancellation, . . . hereinafter referred to as inter partes proceedings. . . ."). Judicial review must be sought in an *inter partes* proceeding in which the USPTO cannot be named as a defendant, but adversarial parties may be named. *See Murdock*, 2015 WL 5460190*,* at *3-4; *see also* 5 U.S.C. § 1071(b)(2) ("The Director shall not be made a party to an inter partes proceeding under this subsection."); § 1071(b)(4) ("Where there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of. . . .").

Plaintiff seems to challenge the USPTO's decision to deny his trademark registration application, as affirmed by the TTAB, and that challenge appears to arise from an *inter partes* administrative proceeding in which Beyonce and/or BGK opposed his application. Thus, the proper defendant(s) for any claims of Plaintiff's under Section 1071(b)(1) appear to be Beyonce and/or BGK, and not the USPTO. The Court therefore construes any such claims as properly brought against Beyonce and BGK, who are named defendants, *Murdock,* 2015 WL 5460190*,* at *3-4; *see* § 1071(b)(2), and to the extent that Plaintiff asserts any such claims against the USPTO, the Court dismisses them for lack of subject matter jurisdiction, under the doctrine of sovereign immunity, *see* Fed. R. Civ. P. 12(h)(3); *Murdock,* 2015 WL 5460190*,* at *3-4.

**b.  The Court must dismiss Plaintiff's claims under Section 1071(b)(1) against Beyonce and/or BGK**

An action seeking judicial review under Section 1071(b)(1) must be brought within "not less than sixty days, as the Director [of the USPTO] appoints." § 1071(b)(1). By regulation, this period has been extended to 63 days after the date of the TTAB's final decision, 37 C.F.R. § 2.145(d)(3), and the Director of the USPTO may extend that period of time if a written request for such an extension is filed and (1) there is a showing of good cause made before the expiration of the 63-day period, or (2) there is a showing of excusable neglect made after the expiration of that period, § 2.145(e)(1)(i)-(ii). Such an action is for judicial review; it is not for damages. *See* § 1071(b)(1) ("The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear. Such adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law.").

In the present action, which the Court construes, in part, as an *inter partes* action against Beyonce and/or BGK under Section 1071(b)(1), the only specific relief that Plaintiff seeks is damages, which are not available under that statute. In addition, to the extent that Plaintiff is seeking judicial review of the USPTO's decision to deny his application to register FEYONCE as a trademark, as affirmed by the TTAB, this Court dismisses such a claim for the same reason that the Western District of Texas previously did in *Maurice II*, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), because Plaintiff did not file such a challenge in a timely manner, *see Maurice*, 2022 WL 875916, at *2.

C.      **Claims under state law under the court's diversity jurisdiction**

Plaintiff has not alleged facts sufficient to invoke the court's diversity jurisdiction with respect to his claims under state law against the non-federal defendants – Beyonce, BGK, Meta, and Google.

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's subject matter jurisdiction is available only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative").

To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he is domiciled, which is defined as the

place where a person "has his true fixed home . . . and to which, whenever he is absent, he has

the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)

(internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* In

addition, for diversity purposes, a corporation is a citizen "of every State and foreign state by

which it has been incorporated and of the State or foreign state where it has its principal place of

business." § 1332(c)(1); *see also The Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a

corporation's principal place of business is its "nerve center," usually its main headquarters).

"[A] limited liability company . . .[,] [however,] takes the citizenship of each of its members."

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir.

2012).

Plaintiff alleges that he is a citizen of Texas. He does not allege facts sufficient to show,

however, that he and all of the non-federal defendants are diverse, specifically, that none of the

non-federal defendants is also a citizen of Texas. Plaintiff alleges that Beyonce is a citizen of

New York, and that Meta, a corporation, is incorporated in Delaware and has its principal place

of business in Menlo Park, California. (ECF 2, at 2-3.) Thus, for diversity purposes, it appears

that Meta is both a citizen of Delaware and California. *See* § 1332(c)(1). Plaintiff also alleges,

however, that BGK "is a Delaware limited liability company with its principal place of business

in New York," and that Google "is a Delaware limited liability company . . . [with] its

headquarters in Mountain View, California." (*Id.* at 2, 3.) If both BGK and Google are actually

limited liability companies (LLCs), then their state citizenships are those of each of their

respective members. *Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 49. Because Plaintiff does

not allege the state citizenships of each of BGK's and Google's members, it is not clear that

Plaintiff and all of the non-federal defendants – Beyonce, BGK, Meta, and Google – are diverse;

if at least one of BGK's or Google's members is a citizen of Texas, Plaintiff and the non-federal defendants are not diverse.

Because Plaintiff does not allege facts showing that he and the non-federal defendants are diverse, the Court dismisses his claims under state law against those defendants – Beyonce, BGK, Meta, and Google – that he asserts under the court's diversity jurisdiction, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 30 days' leave to replead his claims under state law under the court's diversity jurisdiction against the non-federal defendants in an amended complaint in which he clearly shows that he and the non-federal defendants are diverse, and that the claims asserted in the amended complaint satisfy the jurisdictional amount, an amount in excess of the sum or value of $75,000. None of the defendants named in the amended complaint may be a citizen of Texas.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims that he asserts on behalf of Feyonce Inc. without prejudice. The Court also dismisses Plaintiff's claims against the USPTO under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3). The Court further dismisses any claims under federal law that Plaintiff asserts against Beyonce and BGK for lack of subject matter jurisdiction. *See id.* The Court additionally dismisses Plaintiff claims under state law, brought under the court's diversity jurisdiction, against the non-federal defendants – Beyonce, BGK, Meta, and Google – for lack of subject matter jurisdiction. *See id.* The Court, however, grants Plaintiff 30 days' leave to replead only those claims that arise under state law, brought under the court's diversity jurisdiction, against the non-federal defendants, in an amended complaint in which he clearly shows that he and the non-federal defendants are diverse, and that the claims he

asserts in the amended complaint satisfy the jurisdiction amount, an amount in excess of the sum or value of $75,000.

If Plaintiff fails to file an amended complaint within the time allowed, or fails to show good cause to excuse such failure, the Court will enter judgment dismissing this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

 Dated:   March 3, 2023
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge